## No. 26008

### The People of the State of Colorado v. Gerald Jerome Lobato

(530 P.2d 493)

Decided January 13, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Gregory L. Williams, Assistant, for plaintiff-appellee.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The defendant, Gerald Jerome Lobato, appeals from his convictions of robbery and third-degree assault. He contends that the evidence was insufficient to support the guilty verdicts and that the trial court improperly permitted testimony that one of the persons at the scene of the alleged offenses pointed a gun at the robbery victim. We disagree with the defendant and therefore affirm the convictions.

The charges in this case grew out of events occurring in the late evening of September 4, 1972 and the early morning of September 5, 1972. Daryle and Dorothy Baker had been drinking in a neighborhood bar in Colorado Springs and were proceeding in separate cars to another bar for a final drink and an early breakfast. Mrs. Baker was proceeding in the lead car, and another car backed out of a parking space and struck the side of her car. She stopped to exchange information with the driver of the other car, and a seemingly hostile crowd began to form around the two drivers. A man with a gun initially prevented Mr. Baker from getting out of his car, but the gunman was distracted by a commotion in the crowd which enabled Mr. Baker to join his wife. Because of the situation, Mr. Baker suggested to his wife that they leave the scene of the accident, and Mr. Baker again followed his wife in his car.

Mrs. Baker, however, changed her mind and circled a couple of blocks to return to the accident scene to obtain the name of the driver who had backed into her. After arriving at the scene again, a man identified only by Mr. Baker as the defendant reached through the doorway of Mrs. Baker's car and began choking her with one hand. Mr. Baker then approached the defendant and demanded that he get out of his wife's car. Heated words were exchanged, and when Mr. Baker turned to face a disturbance in

the crowd, the defendant hit him. Baker fell to the ground and was kicked several times by the defendant. When Baker finally regained his feet, he was pushed onto the front seat of his wife's car by Lobato. As he was falling into the car, Baker felt his billfold being removed from his rear pocket, and he turned to see the defendant running away with his wallet.

The Bakers then drove away from the crowd, but when a police car was spotted, Mr. Baker flagged it down. The defendant was then identified by Mr. Baker and arrested shortly thereafter. The wallet was discovered under the seat of the car where the defendant was sitting when he was apprehended. The $24 that Mr. Baker said was in his billfold prior to the altercation, had been removed.

### I.

■ The defendant's first contention is that the evidence is insufficient to support the conviction of third-degree assault on Dorothy Baker. Lobato bases this contention on the fact that Mrs. Baker could not identify the man who was choking her and on the argument that Mrs. Baker did not suffer "bodily injury," a requirement for conviction under the third-degree assault statute, 1971 Perm. Supp., C.R.S. 1963, 40-3-204.

Mr. Baker, however, positively identified Lobato as the person who was choking his wife. Since we must assume that Baker's testimony was believed by the jury, this identification was sufficient to allow the jury to conclude that Lobato choked Mrs. Baker.

Mrs. Baker responded negatively to questions asked by the prosecution as to whether she had received any injuries or had been hurt in any way. However, she elaborated on these responses and explained that she sustained bruises on her neck which appeared as red fingerprints and later developed a sore throat.

■ Apparently, Mrs. Baker did not consider bruises and pain, which did not incapacitate her, to be "bodily injuries." Under the statute apposite here, however, the injury need not be of a crippling or otherwise incapacitating nature to be within the statutory prohibition. "Bodily injury" is defined as *"physical pain,* illness, or *any impairment* of physical or mental condi-

tion." 1971 Perm. Supp., C.R.S. 1963, 40-1-1001(3)(c) [emphasis added]. The jury was so instructed. Viewing the evidence in the light most favorable to the jury's verdict, as we must under Colorado law, *People v. Eades,* 187 Colo. 74, 528 P.2d 382, *Dodge v. People,* 168 Colo. 531, 452 P.2d 759, we find the record supports a verdict of third-degree assault.

## II.

The defendant's second contention is that the evidence does not sufficiently establish two essential elements of robbery: (1) taking something of value from the person of another and (2) accomplishing this taking by the use of force, threats or intimidation. The defendant claims that the evidence does not establish that he took the wallet but only that he ended up with the wallet. Furthermore, the defendant contends the record does not support a finding that the wallet was taken by the use of force.

██ Lobato's arguments are completely without merit. Baker testified that only one person was beating him up and that even though he did not actually see Lobato take the wallet from his pocket, he did see Lobato running away with the wallet in his possession immediately after it was removed from Baker's pocket. This evidence was sufficient to permit the jury to conclude that Lobato took the wallet from Mr. Baker. *See Spinuzzi v. People,* 184 Colo. 412, 520 P.2d 1043. Also the undisputed testimony of Baker as to the beating he received from Lobato immediately prior to the removal of the wallet, and the testimony of the police officer as to Baker's condition shortly thereafter was clearly sufficient to allow the jury to find that the wallet was taken by force. *Trujillo v. People,* 112 Colo. 91, 146 P.2d 896.

## III.

██ Finally, Lobato claims that the trial court should have granted his motion for a mistrial because Baker's testimony that a gun was pointed at him by someone other than the defendant was highly prejudicial and irrelevant. This evidence, however, was properly admitted for the purpose of showing the entire chain of events which led to the commission of the crime charged. *People v. O'Donnell,* 184 Colo. 104, 518 P.2d 945.

██ Criminal occurrences do not always take place on a sterile stage; and where, as here, the events leading up to a crime are a

part of the scenario which explain the setting in which it occurred, no error is committed by permitting the jury to view the criminal episode in the context in which it happened. The jury was clearly apprised that the defendant was *not* the man with the gun, and we perceive no error.

The judgment is affirmed.

MR. JUSTICE GROVES does not participate.