February 24, 1978

**78-11 MEMORANDUM OPINION FOR THE DIRECTOR, FEDERAL BUREAU OF INVESTIGATION**

**Federal Bureau of Investigation—Statutory Jurisdiction—Authority of Agents Concerning Non-Federal Offenses**

This is in response to your request for our opinion concerning the responsibility and authority of FBI agents to respond to criminal offenses outside the statutory jurisdiction of the FBI. Your inquiry raises several issues which require separate treatment.

I.

Specifically, the first question raised is whether an FBI agent has an official responsibility and lawful authority to respond to criminal activities which are not violations of Federal law. The context in which you raise this question relates to a situation in which an FBI agent witnesses, or is in the immediate vicinity of, such a crime, and immediate action is required to detain or arrest the offender. Our conclusion is that FBI agents have no Federal authority to take action in such a situation. However, we believe that in these cases FBI agents have authority, and in some situations a legal obligation under State law, to act in response to local criminal offenses.

A.

We think it clear that the FBI has no Federal authority to take action with respect to violations of State law, even in exigent circumstances. The FBI's statutory jurisdiction in every respect—*i.e.*, that of investigation, the execution of search or arrest warrants, or its authority to make arrests without a warrant—is limited to acts concerning violations of the laws of the United States (28 U.S.C. § 553(1); 18 U.S.C. §§ 3052, 3107). *See also* 28 CFR § 0.85. Any action taken with respect to the violation of State or local law would thus be beyond the FBI's explicit statutory authority.

We realize that this conclusion is based on a restrictive construction of the FBI's jurisdictional statutes and Congress' intent underlying them. However, we are reluctant to go beyond the explicit terms of these statutes, at least in the absence of some clear evidence of contrary congressional intent. We have been able to find no indication of any such intent. In fact, we believe that both the case law and Congress' intent concerning the FBI's power to arrest without a warrant—the action really in question here—bolsters our conclusion. Several courts have noted that, in the absence of a congressional mandate, Federal agents have no power under Federal law to arrest for State offenses. *United States* v. *Carter*, 523 F. (2d) 476, 478 n. 3 (8th Cir. 1975); *United States* v. *Unverzagt*, 424 F. (2d) 396, 398 n. 1 (8th Cir. 1970). Rather, if no Federal statute authorizes arrests in a particular situation, State law governs. *United States* v. *Di Re*, 332 U.S. 581, 589 (1948); *United States* v. *Viale*, 312 F. (2d) 595, 599 (2d Cir. 1963). These decisions make clear that where no explicit Federal statute authorizes arrest for State offenses, FBI agents cannot act under Federal authority and must rely instead on State law.

The legislative history underlying 18 U.S.C. § 3052, the statute prescribing the FBI's authority to arrest, is to this same effect. Prior to 1934 no statute conferred on the FBI any powers to arrest, with or without warrant; Congress was content to allow the FBI's powers in this regard to be subject to State law. *See, Coplon* v. *United States*, 191 F. (2d) 749, 753-54 (D.C. Cir. 1951). Recognizing that this situation hampered FBI operations by producing confusion and delay, in 1934 Congress gave the FBI authority to make warrantless arrests in certain situations for offenses against the United States. Act of June 18, 1934, ch. 595; 48 Stat. 1008. Its legislative history demonstrates that all the FBI was granted was Federal authority to "make arrests in emergency situations where laws of the United States are violated." H. Rept. No. 1824, 73d Cong., 2d sess. 2 (1934); S. Rept. No. 1434, 73d Cong., 2d sess. 2 (1934). The FBI's Federal authority, even in emergency situations, was intended to extend only to violations of Federal law. Congress did not alter the FBI's authority to act in other situations, *e.g.*, those involving violations of State law. The FBI's authority to arrest in these situations was unaffected by 18 U.S.C. § 3052. That authority must be based in State law.

We recognize that *United States* v. *Reid*, 517 F. (2d) 953, (2d Cir. 1975), could be read to lead to an opposite result. That case held that a Drug Enforcement Administration agent was assaulted "while engaged in or on account of the performance of his official duties" within the meaning of 18 U.S.C. § 111, even though the crime the agent attempted to stop was not a Federal one. The decision, however, was based on an expansive interpretation of 18 U.S.C. § 111. The court regarded that section as an attempt by Congress to protect Federal agents who "do what they are properly expected to do in the enforcement of State criminal laws." 517 F. (2d) at 964. The court did not, and in our view could not, predicate its decision in any way on the DEA agent's statutory authority to intervene in local offenses. We thus do not believe that the decision enhances the FBI's statutory authority in such instances.

48

## B.

Even though FBI agents may be without Federal authority to intervene in State offenses, they are not without authority or responsibilities in this regard. First, FBI agents should intervene in State offenses under the authority vested in them by State law. Moreover, an FBI agent may be obliged by State law to intervene in a local offense if he is called upon to do so by a local law enforcement officer.

As we noted above, FBI agents would in certain instances have authority under State law to arrest those who have violated State or local law. If the State considers FBI agents to be peace officers within that State, they can arrest offenders of State law in any instance where State officers could do so. Even if the State does not consider FBI agents to be peace officers, the FBI agents would still have the authority granted by the State to private citizens to arrest local offenders. The courts have in numerous instances upheld Federal agents' authority to make arrests as private citizens under State law (*see, e.g., Ward* v. *United States,* 316 F. (2d) 113 (9th Cir. 1963)), even with respect to State offenses. *See, United States* v. *Carter, supra.*

The authority granted by the States to peace officers and private citizens to arrest without warrant may, of course, vary from State to State. However, the common law, and in many instances State statutes, allows a peace officer to make a warrantless arrest when he has reasonable grounds to believe that a felony has been committed and that the person arrested committed it. A private person may make a warrantless arrest where a felony in fact has been committed and where he has reasonable grounds to believe that the person arrested had committed that felony. *See* 1 Wharton's *Criminal Procedure* § 62, at 165-66 (12th ed.,1974); Restatement (Second) of Torts §§ 119(b), 121(b) (1965). The situation is somewhat different for a misdemeanor. At common law, a peace officer or private citizen could make a warrantless arrest when an offense involved a breach of the peace and was committed in his presence. *See, Carroll* v. *United States,* 267 U.S. 132, 156-57 (1925). This rule remains largely true today under a number of State statutes, but other States have departed from this rule in some respects. *See* 1 Wharton's *Criminal Procedure* § 63 (12th ed.,1974).[1]

An FBI agent's intervention in a State offense may subject him to more risk than is usually the case with respect to his action concerning a Federal violation. For example, his conduct in intervening in a State felony as a private citizen may—depending on the exact limits of the particular State's laws—be privileged only if a felony in fact has occurred. Risks also could arise with respect to a misdemeanor if there is no "breach of the peace" involved. Despite these risks, we believe that FBI agents should not be discouraged from intervening in local crimes of a serious nature—*i.e.,* felonies and violent

---

[1] A particular State's different rules concerning arrest for a felony and for a misdemeanor constitute the only way in which a Federal agent's authority may differ due to the exigencies of a particular situation.

misdemeanors. At common law, it was considered the duty of every citizen to try to prevent the commission of a felony. *See, Backun* v. *United States*, 112 F. (2d) 635, 637 (4th Cir. 1940); *Babington* v. *Yellow Taxi Corporation*, 164 N.E. 726, 727 (N.Y. Ct. App. 1928); *see also, United States* v. *New York Telephone Co.*, 98 S. Ct. 364, 374 n. 24 (1977). While this notion seems to have subsided in recent years, perhaps because of the dangers inherent whenever nonprofessionals engage in law enforcement, *see* 1 Wharton's *Criminal Procedure* § 62, at 167 (12th ed., 1974), peace officers still appear to have a responsibility in this regard, even if the crime is not within their official cognizance. *Id.; United States* v. *Reid, supra,* at 964.

A different situation is presented where a local law enforcement officer calls upon an FBI agent to aid him in apprehending one who has violated local law. At common law, a constable or sheriff had a right to summon bystanders to aid him in apprehending a felon, and those summoned were obliged to respond. *See, Elrod* v. *Moss,* 278 F. 123, 129 (4th Cir. 1921). This rule retains some vitality today, *see, Scott* v. *Vandiver,* 476 F. (2d) 238, 240-41 (4th Cir. 1973), and is enforced in many States by statutes requiring, under pain of criminal penalty, private persons to obey the call of an officer to assist in making an arrest. *See, e.g., Williams* v. *State,* 490 S.W. (2d) 117 (Ark. 1973); 1 Wharton's *Criminal Procedure* § 52, at 146 (12th ed., 1974). Federal law enforcement officials would appear to be subject to this same rule, *Elrod* v. *Moss, supra,* perhaps to an even greater extent than an ordinary citizen (*cf. United States* v. *Reid, supra,* at 964), at least if this participation would not intrude on their official duties. However, the call of a local law enforcement official may provide more protection to the FBI agent than he would have if he acted on his own. While rendering such service he would have the status of a *posse comitatus,* and as such possess full authority to render all needed assistance, and he is given the same protection that surrounds the local official. 1 Wharton's *Criminal Procedure* § 52, at 146-47 (12th ed., 1974); *State* v. *Goodmen,* 449 S.W. (2d) 656, 661 (Mo. S. Ct. 1970).

II.

You raise several questions concerning the view the Department of Justice would take with respect to an agent who intervened in a criminal offense outside the FBI's statutory jurisdiction. You inquire whether the Department would view the agent's action to be within the scope of his employment and would afford him representation in any civil or criminal action that might ensue, and whether the Department would pay money damages that might result from a civil action brought against the agent individually.

The Department's representation of employees is generally contingent on two criteria: representation must be in the interest of the United States, and the employee's actions must reasonably appear to have been performed within the scope of his employment.[2] 28 CFR § 50.15(a)(2). The fact that intervention in

---

[2]Other conditions may at times also preclude departmental representation—*e.g.*, the fact that the agent is a target of a Federal criminal investigation regarding his intervention in the local offense.

State offenses may be beyond an agent's Federal authority will not, in our opinion, preclude either of these two criteria from being satisfied. We believe that in the ordinary case it is in the interest of the United States to represent such employees. If representation is not afforded, some State offenses may take place that otherwise would not have; some offenders may escape where they otherwise might not have; cooperation with State and local law enforcement agencies may be unduly hampered; and the FBI's image as a law enforcement agency may be tarnished. It is in the interest of the United States to avoid such results.

We also believe an agent's intervention in local offenses will generally come within the scope of his employment. Even though such action would be beyond the agent's Federal authority, a determination as to scope of employment is not entirely dependent on the extent of Federal authority. Court decisions leave little doubt that a Government agent may act beyond his actual authority and yet still be within the scope of his employment. *Hatahley* v. *United States*, 351 U.S. 173, 180-81 (1956). An agent will be deemed to have acted within the scope of his employment if his acts have "more or less connection" with the duties committed to him by law. *See, Spalding* v. *Vilas*, 161 U.S. 483, 498 (1896); *Cooper* v. *O'Connor*, 99 F. (2d) 135, 139 (D.C. Cir. 1938). Since a Federal agent's intervention in State or local crime is an act of law enforcement, we believe that such action would generally have "more or less connection" with the agent's statutory responsibility, even if those laws are of a different sovereign. The Second Circuit's decision in *United States* v. *Reid, supra,* upholding a conviction under 18 U.S.C. § 111 for an assault on a Federal agent who intervened in a State crime, would support this result. The court noted that the agent was "properly expected" to intervene "in the enforcement of State criminal laws." *Id.*, at 964. This proposition would appear to bring such action within an agent's scope of employment.[3]

While a determination as to representation must depend on the facts and circumstances of each case, the Department has decided, on the basis of the above discussion, to provide representation generally to agents who intervene in State and local crimes. Thus, representation normally will be provided in situations involving a lawful exercise of authority under State law. Moreover, since an unlawful arrest does not necessarily mean that an agent was acting beyond his scope of employment, *see, United States* v. *Simon*, 409 F. (2d) 474, 477 (7th Cir. 1969); *United States* v. *Heliczer*, 373 F. (2d) 241, 245 (2d Cir. 1967), representation normally will be provided in these cases if it appears that the agent at the time of the arrest acted in good faith and with a reasonable belief in the legality of his conduct. Several caveats are in order here, however. An agent's conduct during the course of his intervention could be so egregious that his action will no longer be deemed to be within the scope of his

---

[3]On the basis of this same rationale, it is conceivable that a court could also conclude that a Federal agent's intervention in a State offense was not "manifestly or palpably beyond his authority," *see, Spalding* v. *Vilas, supra; Norton* v. *McShane,* 332 F. (2d) 855, 859 (5th Cir. 1964), and thus may afford that agent the benefit of a qualified official immunity defense. However, we have found no decision on this particular issue.

employment. Moreover, an effort to enforce minor infractions of the law could be deemed as a mere personal frolic, rather than as a serious effort at law enforcement, and as such may not be within an agent's scope of employment. *Cf., Green* v. *James,* 473 F. (2d) 660, 662 (9th Cir. 1973).

The situation is different with respect to the payment of money damages. While a former Deputy Attorney General opinion may have implied that the Department would assume responsibility for money damages awarded against agents intervening in State offenses, we know of no authority for the Department to do this, and we know of no instance in which the Department has actually assumed such a responsibility. The Department may not, under current law, reimburse individuals for damages awarded against them individually. Federal agencies are prohibited from undertaking such action unless they are authorized to do so by law or appropriation. 31 U.S.C. § 665(a); 41 U.S.C. § 11(a). *See also* 16 Comp. Gen. 803 (1937); 7 Comp. Gen. 507 (1928). While the Department is authorized to pay money judgments rendered against the United States, 31 U.S.C. § 724(a), no statute exists which authorizes the Department to pay money judgments awarded against Federal agents in their individual capacities.

We would note here that pending legislation may alter this situation, both with respect to departmental representation and money damages. Under the Department's recent proposal to amend the Federal Tort Claims Act, the Department of Justice would defend all cases involving alleged violations of constitutional rights, if the agent was acting within the scope of his employment or under color thereof; the Government would also be liable for all money judgments awarded in such cases.

### III.

A related issue is whether the Department would institute criminal proceedings under 18 U.S.C. § 111 against one who has assaulted an FBI agent intervening in a State or local offense. The Criminal Division informs us that the fact that the agent responded to a non-Federal violation would not be a factor in determining whether to prosecute under 18 U.S.C. § 111. Rather, they intend to adhere to *United States* v. *Reid, supra,* and in fact would welcome an opportunity to test the limits of that decision. However, in some circumstances State or local prosecution of the assault may be preferable. Also, all courts have apparently not reached the same result as the court in *Reid. See, Schiffner* v. *People,* 476 P. (2d) 756, 758 (Col. S. Ct. 1970) (indicating that an acquittal occurred in the Federal courts due to the fact that an agent's intervention in a local offense was not deemed to be an action in his capacity as a Federal officer).

### IV.

You ask, finally, whether the FBI might issue manual instructions similar to those that DEA issued and later became a focal point in the *Reid* case. Those instructions are stated as follows:

Should an agent happen to witness a State violation (whether he is on or off duty) the Administration expects him to take reasonable action as a law enforcement officer to prevent the crime and/or apprehend the violator. This policy applies only to felonies or violent misdemeanors. It does not apply to traffic violations or other minor offenses. Unless specifically authorized as a peace officer under State law, the agent's authority in these situations is that of an ordinary citizen. A detailed discussion of the agent's authority to make arrests under various State laws can be found in Appendix 66A. The Administration will fully support the agent for any reasonable action taken by him in these situations.

We believe that these instructions go too far. To say that an agent is expected to prevent certain State crimes implies (even though there are caveats) that the agent is under a Federal duty to do so—and we do not believe this to be the case. Moreover, to say that the Government will "fully support the agent for any reasonable action . . . in these situations" may promise, at least implicitly, more than the Government can or will do. For example, as noted above, the Government is without authority to pay any money judgments subsequently awarded against the agent. Moreover, the Government cannot promise representation in every instance, for this must be decided, as it is in all other situations, on a case-by-case basis.

We do, however, believe that the idea of manual instructions on this topic is a good one, and it should set forth the conclusions reached in this opinion. In brief, those conclusions are that there is no Federal authority for FBI agents to intervene in State crimes, that they may do so in certain circumstances under the authority of State law, that they may be obliged to do so under State law if called upon by a local law enforcement official, and that in any event they should be encouraged to intervene in felonies and violent misdemeanors as part of their role as law enforcement officers. The agents should, however, be advised of the potential risks that they may incur in taking such action. They should be made aware that their status will depend on a particular State's law when they are responding to violations outside FBI jurisdiction; since in many States they will not be regarded as peace officers, they are acting as ordinary citizens (unless summoned by local law enforcement authorities). While the Department will in most instances provide legal representation in suits arising out of intervention in local offenses, the Department cannot pay money judgments rendered against the employees in their individual capacities.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*
